# HONORA DERBY, Appellant, v. MARY A. DONAHOE.

### Division Two, December 24, 1907.

1. **SETTING DEED ASIDE: Fraud: Concealment.** In order to set aside a deed as being fraudulently procured, it is not essential that it be made to appear that the grantee wilfully and intentionally perpetrated a fraud in the procuring of her deed. Concealment of facts material to the grantor, by which an undue advantage is taken of the grantor, will constitute the fraud, even though the concealments are not wilful and intentional. The concealment in such case is predicated upon the ground that it operated as a fraud.

2. ———: ———: ———: **Adopted Child: Advice of Counsel: Exchange of Lands.** Plaintiff's mother had conveyed a lot to her and her only brother, but the deed had not been recorded at the time of his death. Defendant, the brother's widow, came to her mother's house, accompanied by defendant's attorney, for the purpose of dividing this and the lot in suit, which had belonged to the deceased brother. The brother left no children, but there had lived with him for several years a foster child, and all the parties then understood that she had by deed been adopted and was his legal heir. Plaintiff was without counsel, and defendant suggested that she say nothing to her husband about the transaction. The attorney suggested that the unrecorded deed be destroyed, that plaintiff convey the lot in suit to defendant, and that defendant convey to plaintiff her interest in the lot described in the deed, and that was agreed upon. Later, defendant and her attorney discovered that the foster child was not the heir of the deceased brother, but did not make that fact known to plaintiff, and in the belief that she was an heir of her deceased brother, plaintiff made the deed to the property in suit, thereby conveying an undivided one-half interest in the property worth $5,000, and receiving therefor a deed by which she obtained defendant's lifetime interest in one-half of property worth $1,500. *Held*, that the concealment was of a material fact, and the deed should be set aside.

3. ———: ———: ———: **Material Fact.** Where plaintiff made the deed to her only brother's widow under the belief that a certain foster child was his legally adopted heir, and the widow and her attorney both ascertained before the deed was made that such child was not the adopted child of the deceased brother, who owned the lot, but did not make that fact

known to her, this was a concealment of a material fact, whether the concealment was intentional or not, since her deed conveyed a substantial interest in the property.

4. ———: ———: ———: **Duty to Make Known.** Where the grantee and her attorney were dealing with a married woman in the absence of any one to advise her, and they knew she thought she had no substantial interest in her deceased brother's lot, since she believed his foster child was his legally adopted heir, and they knew she was not, equity and good conscience required them to make known to her, before she executed a deed conveying her interest, that such child was not the legally adopted heir of her brother who died without descendants.

5. ———: ———: ———: **Inadequacy of Consideration.** Inadequacy of consideration is alone insufficient to warrant a court of equity in setting aside a sale. Yet it may be considered in connection with other facts in determining whether the acts of the parties have operated a fraud upon the grantor.

6. **DEED: Executed and Delivered: Destroyed: Title.** Where plaintiff's mother conveyed a lot to plaintiff and her only son, and the deed was not recorded, and after his death, in the presence of his wife, plaintiff and her mother, the deed was destroyed, all of them consenting thereto, the title still remained where the deed placed it, in plaintiff and the brother's heirs.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy*, Judge.

REVERSED (*with directions*).

*T. D. Cannon* for appellant.

(1)   Defendant can claim no more, at the farthest, than that there was an agreement arrived at on September 5, 1900, based upon a mutual mistake of facts; that is, that the child Bessie Williford was the sole heir of decedent, Cornelius P. Donahoe, and that it was not supposed that the plaintiff was an heir to an undivided one-half interest in the Montgomery street lot in question.   But this of itself is sufficient to entitle the plaintiff to the relief prayed.   Castleman v.

Castleman, 184 Mo. 445; Bishop v. Seal, 87 Mo. App. 256. (2) As it is admitted by defendant and the attorney who testified in her behalf, that on September 6, 1900, defendant ascertained that plaintiff was an heir of decedent, Cornelius P. Donahoe; acting and having plaintiff act in pursuance to the agreement of September 5, 1900, was a representation that the supposed situation still existed. But both assert that neither informed plaintiff of her error and her testimony is uncontradicted that she never knew the truth of the matter until long after September 14, 1900, when she executed the deed in question. "Acts to show fraud are often more expressive than words." Morley v. Harrah, 167 Mo. 74; Mellon v. Webster, 5 Mo. App. 499; Warren v. Ritchie, 128 Mo. 319. (3) Shocking inadequacy has itself been held to amount to "conclusive and decisive evidence of fraud." Nelson v. Betts, 21 Mo. App. 231; 2 Pomeroy (1 Ed.), secs. 927, 928. (4) The deed of April 28, 1900, of Kate Donahoe was delivered and the title passed from the grantor, and her promise to devise the property conveyed by said deed to plaintiff amounted to nothing. Parson v. Parson, 45 Mo. 265; Hall v. Hall, 107 Mo. 107; Chessman v. Whittmore, 23 Pick. 234. (5) The transaction between the defendant, administratrix, and plaintiff, the heir; the plaintiff without experience and without counsel, and the defendant acting with the advice of her attorney (the attorney who advised all the parties as to the best way of settling their mutual interests), will be keenly scrutinized by a court of equity. Evans v. Evans, 196 Mo. 19; Chase v. Rusk, 90 Mo. App. 29. (6) If defendant in pursuing a fraudulent scheme parted with her dower interest in the St. Louis avenue lot, the failure by the petition to offer to reconvey does not bar relief, but the court will adjust the matter according to the circumstances of the case. Axman v. Smith, 156 Mo. 291.

*Ernest C. Dodge* and *Rassieur, Schnurmacher &
Rassieur* for respondent.

(1)    In actions to set aside conveyances, the evidence must be clear and convincing to entitle the plaintiff to a decree.    The evidence in this case is not of
that character.    Jackson v. Wood, 88 Mo. 76; Brown
v. Fickle, 135 Mo. 405.    The decree in this case is
supported by a preponderance of the evidence, and this
court should defer to the findings of the trial court. (2)
Where the deed recites a nominal consideration, evidence will be received to show the actual consideration.    Evidence of this character may always be introduced in support of a deed, but not to defeat it.
The recital in a deed is conclusive to show that there
was some consideration, but it is only prima-facie evidence as to the amount thereof.    Edwards v. Latimer,
183 Mo. 626; See v. Mallonee, 107 Mo. App. 721; Altringer v. Capeheart, 68 Mo. 441; Hollocher v. Hollocher, 62 Mo. 267; Wood v. Broadley, 76 Mo. 33; Bank
v. Aull, 80 Mo. 199; Laudman v. Ingram, 49 Mo. 212.
(3)    Where a deed is fairly obtained, it cannot be set
aside at the option of the grantor; especially where
the grantee cannot be restored to his former position.
Taylor v. Cayce, 97 Mo. 242.    The plaintiff can in no
event be entitled to a rescission if she continues to hold
the consideration which was given to her for the conveyance.    Robinson v. Siple, 129 Mo. 208.


FOX, P. J.—This cause is now pending in this
court by appeal on the part of the plaintiff from a
judgment of the circuit court of the city of St. Louis
dismissing her bill in equity and denying her the relief sought by such bill.

It is not essential to an understanding of the nature and character of this case to burden the opinion
with a reproduction of the pleadings which present the
issues upon which it was tried.    It will suffice to say

that this is a proceeding in equity to set aside and cancel a certain quitclaim deed executed by plaintiff to defendant conveying her interest to certain property in the city of St. Louis, designated as the Montgomery Street property, on the ground that said deed was fraudulently procured, by false and fraudulent representations, and in its procurement a fraud was perpetrated upon the plaintiff. The answer interposed to this petition in effect sharply presents the issue as to the truth of the facts alleged in the petition and avers that the execution of the deed sought to be set aside was brought about by an amicable arrangement of the mother of the plaintiff and defendant's deceased husband, and that such deed was voluntarily, without any representations made or inducements held out by the defendant, executed and delivered to the defendant. The replication was a general denial of the new matter set up in the answer. The evidence introduced at the trial will further indicate the nature and character of the issues involved in this proceeding.

In October, 1904, this cause came on for trial of the issues presented in the pleadings. The trial as indicated from the issues presented, involved the investigation of a conveyance charged to have been fraudulently obtained and procured, and upon questions of that character great latitude is allowed in making the proof; therefore, the testimony as detailed by the witnesses, as disclosed by the record, is quite voluminous. While we have read in detail all of the testimony developed at the trial, we do not think it is essential, and shall not undertake in a statement of this cause, to give anything like a detailed statement of the testimony of witnesses testifying in the cause. We shall be content with a brief statement of the facts developed at the trial which the testimony tended to prove. Upon some of the material facts involved in

this controversy there is no conflict; as to others the testimony is somewhat conflicting.

The plaintiff in this case, Mrs. Honora Derby, is a daughter of Mrs. Kate Donahoe. Cornelius P. Donahoe was a son of Mrs. Kate Donahoe and a brother of the plaintiff in this action. Cornelius died August 31, 1900, leaving Mary A. Donahoe, his widow, who is the defendant in this cause. Cornelius P. Donahoe died seized of the property designated in the petition as the Montgomery street lot. Cornelius P. Donahoe left no children surviving him; it was, however, developed at the trial that Cornelius P. Donahoe and his wife, Mary A. Donahoe, now his widow and the defendant in this cause, in 1896 had in custody an orphan child named Bessie Williford. They procured this child from the Catholic Orphan Board. This child was, at the time they received it, three or four years old, and there was testimony tending to show that Cornelius P. Donahoe and his wife, the defendant in this cause, at the time they received the custody of the child, had to sign what Mrs. Mary A. Donahoe says they supposed was a deed of adoption, and she further states that she and her husband always supposed that they had legally adopted this child. There was testimony tending to show that the child continued in their custody and care as though it was their own and had been legally adopted, and Mrs. Mary A. Donahoe states that since the death of her husband she has retained the child in her custody and that it assumed the name of Donahoe and has been treated as her child and was recognized by the people generally as the child of Cornelius P. Donahoe and his wife. It is further shown by the evidence that in April, 1900, Mrs. Kate Donahoe, as heretofore stated the mother of this plaintiff, Mrs. Derby, and Cornelius P. Donahoe, the late husband of the defendant in this cause,

owned a certain lot of ground in the city of St. Louis which is designated as the St. Louis Avenue lot. On the 28th day of April, in the year 1900, Mrs. Kate Donahoe executed a deed to the lot known as the St. Louis Avenue lot to her son, Cornelius P. Donahoe, and the plaintiff in this cause, Honora Derby. This deed was properly executed and duly acknowledged and was delivered to Cornelius P. Donahoe, who kept it among his papers, but it was never placed of record. In consummating the transaction relating to the real estate involved in this controversy it was arranged that the defendant, Mrs. Mary A. Donahoe, should send for Mr. E. C. Dodge, an attorney-at-law, who was to attend to the defendant's affairs in connection with the transactions between the defendant and her mother and the defendant and the plaintiff, Mrs. Derby. On September 5, 1900, Mr. Dodge, attorney for the defendant, went to the house occupied by Mrs. Kate Donahoe. While at the house the defendant, Mary A. Donahoe, produced the deed of April 28, 1900, by which the mother, Mrs. Kate Donahoe, had conveyed to her deceased husband during his lifetime and to his sister, the plaintiff, Mrs. Derby, the St. Louis Avenue lot. This deed had not been recorded, and Mr. Dodge suggested that they ought to treat this deed as though it had never been made and tear it up, and that the mother, Mrs. Kate Donahoe, and Mrs. Derby, the plaintiff, should give a quitclaim deed to the defendant, Mary A. Donahoe, for the Montgomery Street lot, and the defendant should give Mrs. Derby a quitclaim deed for the St. Louis Avenue lot, and the mother should by will give and devise whatever she had to her daughter, Mrs. Derby. It appears that at this meeting the question was discussed whether it was best for Mrs. Kate Donahoe to make a deed or will, and it was concluded that a will was preferable. At this meeting on September 5, 1900, Mrs. Kate Donahoe executed a con-

veyance to the defendant, Mary A. Donahoe, convey-
ing her interest in the property described as the Mont-
gomery Street lot.    Mr. Dodge, the attorney, then
left, taking along with him the deed of April 28, 1900,
and was to come back in a few days with the other
papers.    The facts developed at the trial as to the
meeting on September 5, 1900, at which time Mrs. Kate
Donahoe, the mother, executed and delivered her deed
to the defendant, Mary A. Donahoe, indicate that the
parties were all proceeding in the   transactions be-
tween them upon the theory that Bessie Williford was
the legally adopted child of Cornelius P. Donahoe, and
the property designated as the Montgomery Street
lot, of which he died seized, would go to her subject
to the rights of the widow and the payment of debts.
Mr. E. C. Dodge in his testimony states that it was
understood that Bessie Williford was   the legally
adopted child of Cornelius P. Donahoe and that the
deed executed by Mrs. Kate Donahoe, on the 5th of
September, was a mere matter of form and in fact she
had no title upon which to predicate a conveyance.  On
the following morning after the meeting on the 5th
of September, 1900, at the home of Mrs. Kate Dona-
hoe, which was the morning of the 6th of September,
the defendant, Mary A. Donahoe, accompanied by her
attorney, went to the probate court to administer upon
the estate of Cornelius P. Donahoe, and made the us-
ual affidavit that the heirs of the deceased Cornelius
P. Donahoe were Mary A. Donahoe, the widow, and
Bessie Donahoe, an adopted daughter, shown to be
Bessie Williford, both of the city of St. Louis.    On
the afternoon of the same day that letters of adminis-
tration were sought in the probate court in the fore-
noon, the defendant, with her attorney, Mr. Dodge,
went to the Orphan Board, and after a thorough inves-
tigation discovered that the papers signed by Corne-
lius P. Donahoe and Mary A. Donahoe, which they had

assumed as an adoption, was nothing but a contract, and that Bessie Williford was in fact under the law not an adopted child. Notwithstanding this discovery, however, it does appear that on September 12, nearly a week after the discovery that Bessie Williford had not been legally adopted, the defendant, Mary A. Donahoe, the widow of Cornelius P. Donahoe, presented the following petition to the probate court:

"Your petitioner states that she is the widow of C. P. Donahoe, who died in this city August 31, 1900.

"That at the time of his decease there was on hand no grain, meat or provisions to sustain herself and their adopted child, Bessie Donahoe, aged eight years.

"That petitioner, therefore, asks an allowance for one year from the estate in lieu of provisions not on hand.

"That in the opinion of petitioner the sum of three hundred dollars will be sufficient for this purpose.

"State of Missouri, City of St. Louis, ss.

"Mary A. Donahoe, being duly sworn, on her oath says that the matters and facts set forth in the foregoing petition are true to the best of her knowledge, information and belief.

"Mary A. Donahoe.

"Sworn to and subscribed before me this 12th day of September, 1900.

"C. Wm. Koenig, Clerk.

"Barney Seaman, Deputy Clerk."

On September 14, 1900, all the parties again met at the home of Mrs. Kate Donahoe. The subject of the real estate involved in this controversy was discussed in a general way. Mrs. Derby, the plaintiff, at this meeting, executed a quitclaim deed, quitclaiming all interest in the Montgomery Street lot to the defendant, and the defendant executed a deed from her

to the plaintiff quitclaiming all interest in the St. Louis Avenue lot, and the deed of April 28, 1900, executed by the mother, Mrs. Kate Donahoe, to Cornelius P. Donahoe and his sister, the plaintiff, Mrs. Derby, conveying the St. Louis Avenue lot, was torn up in the presence of all of them. Mrs. Kate Donahoe executed a will which provided for the payment of her debts and for proper funeral expenses; the residue of her estate was to be given to the plaintiff, Mrs. Derby, free from the control or restraint of her husband, James Derby. That the plaintiff, Mrs. Derby, was thoroughly impressed with the truth of the general understanding that Bessie Williford had been legally adopted by her brother, Cornelius P. Donahoe, and would inherit the same as one of his own children, is not denied or in any way contradicted by any of the evidence in this cause; in fact, it is practically conceded by the defendant and Mr. Dodge, her attorney, that it was believed by all of the family that there had been a legal adoption and it may be further stated that the defendant, as well as her attorney, Mr. Dodge, knew that the plaintiff was impressed with the idea and firmly believed that Bessie Williford had been legally adopted and entitled to inherit her brother's property.

There is an absence from the record of any disclosures which indicated that the plaintiff, Mrs. Derby, on September 14, 1900, at the time she executed her deed, had received any notice or information which would in any way tend to change her belief respecting the adoption of the child Bessie. The record further discloses the development of the fact at the trial, that, notwithstanding the defendant, Mary A. Donahoe and her attorney, Mr. E. C. Dodge, had discovered on the afternoon of the 6th of September, the next day after the first meeting on the 5th of September, that the child Bessie had not been adopted by Cornelius P.

Donahoe during his life time, and that in fact Corne-
lius P. Donahoe died without issue, either springing
from his body or by adoption, neither of them at the
meeting of September 14th, at the time plaintiff exe-
cuted the deed to the lot designated as the Montgom-
ery Street property, which is the conveyance sought
to be set aside by this proceeding, said anything to
Mrs. Derby, the plaintiff, or in any way intimated
or explained to her the discovery they had made that
Bessie was not an adopted child and could not inherit
any of the property left by Cornelius P. Donahoe. The
record, however, does not disclose that this was a wil-
ful and intentional concealment of a material fact, yet
it is conceded that neither Mr. Dodge, the attorney, nor
the defendant made known to her anything about the
discovery that Bessie was not an adopted child and
would not inherit any of the property left by Corne-
lius P. Donahoe.    The testimony on the part of the
plaintiff, Mrs. Derby, tends to show that the plaintiff,
at these various meetings and in the execution of her
conveyance and the acceptance of the conveyance exe-
cuted by the defendant, was without any legal adviser
and she states and it is not denied that the defendant
at one of these meetings suggested to her not to let
her husband know anything about it, there was no ne-
cessity for him being present, and that she executed the
conveyance to the Montgomery Street lot and accepted
the conveyance executed by the defendant upon the rep-
resentation of the defendant that Bessie was a legally
adopted child and would inherit Cornelius's property
and that she executed the deed in the firm belief that
Bessie had been legally adopted and that she was in-
duced to such belief, not only by the representations
of the defendant, but as well by her conduct and the
conduct and actions of defendant's attorney, Mr.
Dodge.    In the conduct and management of the es-
tate of Cornelius P. Donahoe the record discloses that

the defendant, who was the administratrix, and her
attorney, Mr. Dodge, recognized Bessie as a legally
adopted child, at least there is an entire absence from
the record of any suggestion to the probate court of
the discovery that she was not adopted and that
they had made a mistake in the affidavit. The
testimony further tended to show that the reasonable
value of the Montgomery Street lot, being the lot em-
braced in the deed which is sought to be set aside, was
reasonably worth somewhere in the neighborhood of
five thousand dollars and that the St. Louis Avenue
lot in which there was a conveyance by the defendant
to the plaintiff of whatever interest defendant had in
such property, was worth about fifteen hundred dol-
lars.

The testimony on the part of the defendant tends
to show that the meetings on the 5th of September
and the 14th of September, were to arrange for an ami-
cable settlement between the parties in accordance with
the wishes of the mother, Mrs. Kate Donahoe, and that
the execution of the various instruments heretofore
referred to was in accord with the mother's wishes and
were voluntarily executed without any misrepresenta-
tions or fraud and was acquiesced in and consented to
by all the parties concerned, and that Mr. Dodge, the
attorney representing the defendant, on account of the
suggestion of the mother, Mrs. Kate Donahoe, that she
wanted the defendant, the wife of Cornelius, to have
all of his property, and her daughter, Mrs. Derby, to
have the property of the mother, was induced to sug-
gest that the deed of April 28, 1900, conveying the St.
Louis Avenue lot to Mrs. Derby, the plaintiff, and
Cornelius P. Donahoe, not having been recorded, could
be destroyed and then the arrangement as to the exe-
cution of the other conveyances could be proceeded
with without difficulty.

While we have not undertaken to set out in detail

the testimony of the various witnesses introduced in respect to the transaction now in judgment before us, we have in a very brief way indicated the nature and character of the facts developed at the trial as well as the tendency of the testimony on each side sufficiently to enable us to determine the legal propositions involved in the disclosures of the record.

At the close of the testimony the cause was submitted and the court upon the testimony adduced denied the the plaintiff the relief sought and dismissed her bill. A timely motion for new trial was filed and by the court overruled, and from the judgment rendered in this cause denying the prayer of her petition and dismissing her bill the plaintiff in due time and proper form prosecuted her appeal to this court, and the record is now before us for consideration.

## OPINION.

We have sufficiently indicated in the statement of this cause the controlling facts developed at the trial upon which the case was submitted to the court. We shall not undertake to discuss any of the facts concerning which there is any conflict, but our conclusions will be predicated upon a state of facts which, as disclosed by the record, are practically uncontradicted.

It appears from the record that at the meeting of the parties concerned in this transaction at which the respective conveyances heretofore referred to in the statement were discussed, and at one of which the conveyance which is sought to be set aside in this proceeding was executed and delivered, the plaintiff, Mrs. Derby, a married woman, was without any counsel, not even her husband to consult or advise, respecting the conveyance she was about to execute. On the other hand, it was arranged, as is conceded in the statement of this cause by counsel for the respondent, that Mr. E. C. Dodge, an attorney-at-law, was sent for respect-

ing these meetings and was present at the meetings on September 5th and the 14th, attending, as is recited in the statement by the respondent, to the affairs of the defendant. That the plaintiff had been told that Bessie Williford was the legally adopted child of Cornelius P. Donahoe and the defendant Mary A. Donahoe and that the defendant and her attorney, Mr. Dodge, proceeded with the administration of Cornelius P. Donahoe's estate upon the theory that Bessie was a legally adopted child and heir and would as such heir inherit his property, is not questioned. It is also clearly disclosed by the record that, at the time of the execution of the deed by Mrs. Derby, the plaintiff, to the defendant, which is sought to be set aside in this proceeding, she had received no information to the contrary, but was still of the opinion that Bessie was a legally adopted child and would therefore inherit whatever property belonged to the estate of her brother. Mr. Dodge, the attorney, at the first meeting on September 5, 1900, at which time the quitclaim deed was procured from the mother, Mrs. Kate Donahoe, to the defendant, conveying her interest in the Montgomery Street lot, states that it was generally understood by the family that Bessie was a legally adopted child and would inherit the estate of Cornelius P. Donahoe, deceased. In fact, Mr. Dodge very frankly stated that he did not think the conveyance from the mother at that time would amount to anything as a conveyance of property. It was also developed at the trial, as shown by the record, and there is no dispute as to that fact, that the defendant and Mr. Dodge, her attorney, on the next afternoon after the meeting on September 5th, ascertained definitely that Bessie was not an adopted child of Cornelius P. Donahoe and under the law would have no interest whatever in his estate. This fact was known to the defendant and her attorney when they met with the plain-

tiff on September 14, 1900, to have the deed executed by her, to the defendant, and at which time the defendant also executed a deed to the plaintiff for her interest in the St. Louis Avenue lot property. It is also in no way denied, that, notwithstanding they had complete knowledge of the fact that Bessie would not inherit the estate of Cornelius P. Donahoe, and while they fully discussed the execution of the conveyances, they destroyed a deed which had been executed by the mother to the plaintiff and her brother, Cornelius P. Donahoe, long prior to that date, which deed had been delivered to Cornelius P. Donahoe, yet there was not a word said or an intimation or insinuation made to the plaintiff, Mrs. Derby, that they had discovered that Bessie was not in fact an adopted heir of Cornelius P. Donahoe. It is also disclosed by the record that on the 28th of April, 1900, Mrs. Kate Donahoe, the mother of Cornelius and the plaintiff, Mrs. Derby, executed to them a conveyance which was delivered to her son, Cornelius, conveying the St. Louis Avenue lot, which she owned at the date of the execution of that deed. This deed, as heretofore indicated, at the meeting on September 14, 1900, was torn up and destroyed by Mr. Dodge, as he states, with the consent of all the parties present. It also appears from the disclosures of the record that the defendant, Mary A. Donahoe, in consideration of the conveyance from plaintiff to her, executed a conveyance to the plaintiff conveying all of her interest in the St. Louis Avenue lot, and Mrs. Kate Donahoe executed a will leaving her estate, after providing for the payment of certain sums, to the plaintiff, Mrs. Derby. The testimony as disclosed by the record substantially shows that the Montgomery Street lot was reasonably worth something near the sum of five thousand dollars and that the St. Louis Avenue lot was worth about fifteen hundred dollars.

The foregoing facts as recited are disclosed by the

record and are practically uncontradicted, and whatever conclusions may be reached as to what should have been the proper decree in this proceeding will be predicated upon these undisputed facts.

## I.

It is not essential in order to entitle the plaintiff to the relief prayed for in her petition that it should appear that the defendant wilfully and intentionally perpetrated a fraud in the procuring of her conveyance which is sought to be set aside.    Courts of equity in dealing with the subject of fraud in transactions between parties have long since fully recognized that there are certain acts that, when done wilfully and intentionally respecting a transaction between the parties, would constitute actual fraud, and that the omission to do certain things or the concealment of facts · which are material to the party with whom you are dealing, by which an undue advantage is taken of your adversary in the deal, would also constitute a fraud, not upon the basis that the omissions or concealments were wilful and intentional, but predicated upon the ground that it operated as a fraud upon the party with whom you are dealing.

We have been unable to find anywhere a more concise definition of fraud than the one given by Mr. Kerr in his work on Fraud and Mistake, pages 42 and 43, where it is said that "fraud, in the contemplation of a court of equity, may be said to include properly all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another; or · by which an undue, unconscientious advantage is taken of another."

Courts of equity do not hesitate to condemn the consummation of a transaction which has been brought about by the commission of the wilful and intentional

fraudulent acts, or by the doing of such things in consummating a deal as would operate a fraud upon the opposing party.     It often occurs, though the conduct and acts of the party may not be wilful or intentional, that such conduct and acts may be well suited to accomplish as unconscionable deal as though they were wilful and intentional and specially designed to accomplish some fraudulent purpose.     This court in one of the early cases emphatically condemned all such acts or conduct of a party which would operate as a fraud upon the person with whom he was dealing, and it was expressly ruled in Clarkson v. Creely, 40 Mo. 114, that it was not absolutely essential in a business transaction to establish that it was designed to entrap one of the parties to the transaction, but that if it clearly appeared that the acts of the party seeking to consummate a deal operated as a fraud, that in that case it was clearly the duty of a court of equity to not permit such party to reap any benefit from such acts.

In Bishop v. Seal, 87 Mo. App. 256, it was held that it was not essential in order to warrant a condemnation of a transaction by a court of equity that a wilful design to defraud plaintiff should be shown against the defendant, but if it is made to clearly appear that if plaintiff's grievance is left unredressed it would operate as a fraud, notwithstanding a lack of intention upon defendant's part, equitable relief should be granted, and the court said in that case, "In such cases . . . it is not a question of willful and designing fraud, but rather a question whether a fraud will result to plaintiff if she be put off without redress."

Measured by the rules of equitable jurisprudence, as indicated in the announcement by the appellate courts of this State as well as by the text-writers upon the subject now under consideration, the plain proposition confronts us as to whether upon the undisputed facts

as heretofore recited the transactions between plaintiff and defendant which resulted in the conveyance involved in this suit, should be condemned and the conveyance set aside. At the very inception of the investigation of this proposition we are of the opinion that it will not be seriously contended that the plaintiff and defendant at the time of the consummation of this conveyance were not upon an equal footing. The plaintiff was a married woman, without knowledge or experience in the transaction of business relating to the conveyance of rights and interests in real estate. At the time this conveyance was executed, on September 14, 1900, she was present without counsel, not even her husband, to suggest or advise her respecting the protection of her rights, and there is testimony tending to show that the defendant suggested that there was no necessity for the presence of her husband. On the other hand the defendant was present with counsel, who was concededly there to attend to her affairs. That plaintiff was of the opinion at the time of the execution of this deed that Bessie Williford was the legally adopted child of her brother, Cornelius P. Donahoe, and by reason thereof she inherited no interest in the Montgomery Street lot, and that she had reason to entertain such opinion from the acts and conduct of the defendant as well as her attorney and from the affidavit made by the defendant in the probate court, there can be no dispute. The defendant and her counsel had full knowledge at the time of the execution of this conveyance that Bessie Williford was not an heir and would not inherit this property, and it is manifest that they knew that the plaintiff, Mrs. Derby, was of the opinion that she would inherit, therefore it is clear that it was a material fact concerning the interest of the plaintiff in the real estate embraced in the conveyance which is sought to be annulled by this proceeding.

It is conceded that the defendant and her counsel,

Mr. Dodge, notwithstanding their full knowledge of the material fact as to who was to inherit the Montgomery Street lot of which Cornelius P. Donahoe died seized, and notwithstanding their knowledge of the fact that Mrs. Derby, the plaintiff, was under the impression that she would not inherit any part of that lot, but that Bessie Williford, by reason of her supposed adoption would do so, concealed (whether intentional or not, is immaterial) such material fact concerning the interest of the plaintiff, Mrs. Derby, in the real estate she was then about to convey; at least they failed to inform the plaintiff, Mrs. Derby, of the material fact of which they had full knowledge and of which she was ignorant, which in equity and good conscience they should have done.

The condition surrounding the plaintiff and defendant at the time of the execution of the conveyance which is sought to be set aside in this proceeding, may thus be summarized: The defendant was present with her counsel for the purpose of procuring a conveyance from plaintiff, Mrs. Derby, to her interest in the Montgomery Street lot. The defendant and her counsel knew that the plaintiff had a substantial interest in the property embraced in the deed involved in this proceeding. On the other hand, the plaintiff was ignorant respecting her rights and interests in said property. She was there without counsel and her ignorance upon the subject was largely due to the acts and conduct of defendant and her counsel. Their attitude in the administration of the estate in which the affidavit of defendant was filed, designating the heirship to the estate of Cornelius P. Donahoe, deceased, could have but one tendency, and that was to emphasize the correctness of the general understanding that Bessie had been legally adopted by Cornelius P. Donahoe and would inherit the property of which he died seized. To this, together with other facts and the failure of the defendant and

her counsel to make known to the plaintiff, from whom they were seeking a conveyance, the material fact of which they had full knowledge, and of which she was ignorant, that she had a substantial interest in the real estate, must be attributed the cause of the ignorance of the plaintiff of her rights and interest in the property in dispute at the time she executed the conveyance. It must not be overlooked that the defendant, with her counsel, was dealing with a married woman in the absence of anyone to advise her, and upon the undisputed facts disclosed by this record, that they knew that she thought she had no interest in the property to which she was executing the quitclaim deed, and that the defendant, as well as her counsel, knew full well that she did have a substantial interest, therefore in our opinion, equity and good conscience would have dictated to the defendant and her counsel the propriety of advising her of this material fact before procuring a conveyance to her property.

It has been expressly ruled by this court, and the principle has been sanctioned by eminent text-writers, that the concealment or suppression of a material fact respecting the interest of the opposing party in the deal, as in the case at bar, is equivalent to a positive assertion that the material fact did not exist. [Morley v. Harrah, 167 Mo. l. c. 74.]

The circumstances concerning this transaction confronting the plaintiff, Mrs. Derby, at the date of the execution of the quitclaim deed to defendant, was simply one where she was to execute a quitclaim deed to real estate in which she was then of the opinion that she had no interest to convey. It was certainly a very material fact for her consideration (of which the defendant and her counsel had full knowledge, and of which she was in entire ignorance), to know that she would, in fact, inherit one-half of the property designated as the Montgomery Street lot. It doubtless

would have made quite a difference with her if she had known, or had been informed, that she had a substantial interest in the property which she was about to convey.

Emphasizing the advantage of defendant over the plaintiff in this deal and the benefits reaped thereby, our attention is directed to the manifest difference in the value of the property rights exchanged in this deal, or in other words, the gross inadequacy of consideration for the property conveyed by the plaintiff. There having been no election by defendant, the widow of Cornelius P. Donahoe, respecting the Montgomery Street lot, and he having died without issue, upon his. death this property descended to his mother Mrs. Kate Donahoe, and the plaintiff, his sister, subject to the homestead and dower rights of the widow. The plaintiff, therefore, inherited a one-half interest in the Montgomery Street property, which was conveyed to the defendant by the deed involved in this suit. The half interest of plaintiff in this property which she conveyed to the defendant, was reasonably worth, according to the tendency of the proof, about two thousand or twenty-five hundred dollars. The defendant executed her deed to the plaintiff conveying her interest in the St. Louis Avenue lot. The facts developed at the trial show that this lot was owned by Mrs. Kate Donahoe, the mother, and some time prior to the date of the conveyances by plaintiff and defendant, that is, on April 28th, 1900, she executed and delivered to Cornelius P. Donahoe, her deed conveying this lot to her son Cornelius and her daughter, the plaintiff herein, Mrs. Derby. It was this deed that was torn up on September 14, 1900, at the time plaintiff executed the deed in suit. The conveyance which was destroyed is not involved in this proceeding, except as evidence tending to show the interest of plaintiff as well as the interest of defendant, which was embraced in her deed to plain-

tiff. It is hardly necessary to say anything upon the
effect of the tearing up of that deed; the law is so well
settled that, when a conveyance is executed and deliver-
ed, the title to the property cannot be transferred or
reinvested in the original owner in that sort of a way.
It was expressly ruled by this court in Parsons v. Par-
sons, 45 Mo. 265, that "if the deed was delivered by the
grantor with the intent and purpose of vesting the title
in the grantee, it amounted to a complete transfer of
real estate, and no subsequent act could defeat it. A
valid deed, once delivered, has the effect of vesting
the title in the grantee, and although it may be after-
wards destroyed, or come into the possession of the
grantor, it will not operate as 'a revestiture of title.
When once delivered it can only be defeated by virtue
of some condition contained in the deed itself.'' The
rule announced in the Parsons case was unqualifiedly
approved in the comparatively recent case of Hall v.
Hall, 107 Mo. 101. It therefore follows that at the date
of the death of Cornelius P. Donahoe, the title to the St.
Louis Avenue lot was vested in him and his sister, the
plaintiff herein, by virtue of the conveyance of Mrs.
Kate Donahoe on April 28, 1900. It also follows from
what has heretofore been said, that, on September 14,
1900, when plaintiff and defendant exchanged deeds,
plaintiff at that date owned, by virtue of the deed of
her mother of April 28, 1900, one-half of the St. Louis
Avenue lot, and her brother, Cornelius, who owned the
other half, having died without issue, and defendant,
who was his widow, not having made an election, plain-
tiff took by descent one-half of her brother's interest,
which amounted to one-fourth of the entire property,
which together with her one-half interest under the
deed of her mother, made plaintiff the owner of three-
fourths of the St. Louis Avenue lot, subject to the dow-
er interest of defendant, who was the widow of Cor-
nelius P. Donahoe. The mother, Mrs. Kate Donahoe,

took of the St. Louis Avenue lot by descent from her son, one-half of her son's interest, which amounted to one-fourth of the property. It also follows that the defendant at the time she executed the conveyance to plaintiff conveying her interest in the St. Louis Avenue lot not having made any election, was only entitled to a dower interest in the one-half interest of such property, of which her husband died seized, and that is all she conveyed by deed to the plaintiff. The St. Louis Avenue lot, according to the tendency of the proof upon the trial, was worth about fifteen hundred dollars. From this there can be but one conclusion, that is, that the dower interest, which was a life estate in one-third of the one-half of the St. Louis Avenue lot, was, as compared to the interest of the plaintiff in the Montgomery Street lot, of little value.

Now while inadequacy of consideration is insufficient to warrant a court of equity in annulling a sale of real estate, yet in connection with other facts it may be considered in determining the question as to whether an actual fraud has been committed upon the rights of an individual, or whether the conduct or acts of the parties have been of such a nature and character as are calculated to operate a fraud upon those who are induced to act by reason of such conduct and acts of the parties. The question of the effect of grossly inadequate consideration in a sale between parties, was most exhaustively treated by Judge THOMPSON in Nelson v. Betts, 21 Mo. App. l. c. 231. The law applicable to the subject was thus clearly, and, we think, correctly stated: "The general rule is that mere inadequacy of price or consideration is no ground for claiming the rescission of a contract in equity. [Phillips v. Stewart, 59 Mo. 491.] Equity does not undertake to act as the guardian of mankind. It does not aid people who make foolish bargains. But there are exceptions to the rule, which apply with peculiar force where the parties do not stand

in equal positions, do not possess equal knowledge, and where there are circumstances of fraud and oppression, on the one part, and of distress and submission, on the other. [Durfee v. Moran, 57 Mo. 374; Railroad v. Brown, 43 Mo. 294.] In many such cases a shocking inadequacy of price or of consideration, without more, is held to be evidence of fraud, and courts of equity grant relief, not on the ground of inadequacy of consideration, but on the ground of fraud shown by the shocking inadequacy of consideration. As stated by the writer already quoted from: 'Inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such cases the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby.' [Kerr on Fraud and Mistake, 161, citing many authorities.] The monstrous inadequacy between the benefit the plaintiff received in the loan of the small sum of twenty-five dollars and the monthly interest which she was compelled to pay, amounting to $3.70, is, to say the least, strong evidence of fraud and imposition on the part of the defendant C. F. Betts.''

We see no necessity for pursuing any further the consideration of the propositions disclosed by the record. We will not say that the defendant or her counsel wilfully or intentionally perpetrated a fraud upon the plaintiff, but from the undisputed facts, as heretofore recited, we see no escape from the conclusion that their acts and conduct concerning the procuring of this conveyance, would, at least, operate a fraud upon the plaintiff, respecting her rights and interests in the real estate conveyed.

We have given expression to our views upon the questions presented and in our opinion the action of the trial court in denying plaintiff relief upon the facts developed, and dismissing her petition, was erroneous.

The judgment of the trial court should be reversed with directions to set aside the conveyance executed by plaintiff to defendant on the 14th of September, 1900, upon condition that the plaintiff reconvey by quitclaim deed to the defendant whatever interest she may have acquired in the St. Louis Avenue lot from the defendant by her deed executed to the plaintiff on September 14, 1900, and it is so ordered.

All concur.