CHARLES W. SCHNEIDER and CHARLES W. SCHNEIDER, Administrator of the Estate of MARY M. SCHNEIDER, Deceased, Appellants, v. C. M. JOHNSON and HAZEL A. JOHNSON.—No. 40269.—207 S. W. (2d) 461.

Division One, January 12, 1948.

*Roy Hamlin* for appellant.

*Smoot & Smoot* for respondents.

[462] DALTON, C.—Action in equity to cancel and set aside two deéds purporting. to convey to defendants described real estate in Scotland County.

Plaintiffs charged (1) that the deeds were null, void and of no effect for lack of consideration; (2) that the grantors were not mentally competent to execute the deeds; and (3) that the acts and conduct of the defendants in procuring and accepting the deeds constituted a fraud on the grantors. The trial court found that the deeds were made voluntarily without fraud, compulsion or any undue influence; and that the grantors therein were in their right minds at the time they made the deeds and understood the nature and character of the instruments they were executing. Plaintiffs' petition was dismissed and judgment entered for defendants. Plaintiffs have appealed.

On March 12, 1945, Charles W. Schneider and Mary M. Schneider, his wife, conveyed to defendants by warranty deed the described lots in Granger, Scotland County, "together with all household and kitchen furniture contained in the dwelling house located on the above described lands," and a fraction of an acre of additional land. The consideration stated was "one dollar and other valuable consideration." The grantors reserved "to themselves the life use, possession, rents and profits of the above described real estate."

On May 24, 1945, and after the death of his wife, Charles W. Schneider conveyed to defendants by warranty deed 79 acres of described real estate in Scotland County. The deed recited a consideration of one dollar and the agreement of second parties "to care for first party when requested in writing to do so by first party and at the death of the said first party to give him a respectable burial." A life estate was reserved in the grantor.

The improvements on the property in Granger consisted of a three room frame house, in which the Schneiders resided, and certain out buildings, one of which housed a small mill. The house and two lots were owned by Mrs. Schneider, the farm land and other lots were owned by her husband.

Mrs. Schneider was 76 years of age and Mr. Schneider 78. They had no children. Mr. Schneider's nearest relatives were his brothers and sisters and Mrs. Schneider's nearest relatives were nieces and nephews. Whether these relatives resided near or far does not appear from the evidence. Mr. Schneider had been somewhat hard of hearing for about three years. He had not been actively employed for twenty or twenty five years, but for fifteen years he had been constable of the township and he had a small income from the operation of the mill, grinding feed. Prior to instituting the present suit, he was appointed administrator of his wife's estate and was acting as such at the time of the trial. The reasonable value of farm property was $6000, the residence and lots in Granger about $1500 and the household goods and kitchen furniture $400 to $500. The Schneiders had no other property. The Johnsons resided on a farm 1¾ miles

from the Schneiders. At the time of the trial, Mr. Johnson was 52 years of age and Mrs. Johnson 51.

The Schneiders and the Johnsons were well acquainted, but not related. Both Mr. and Mrs. Schneider had known Mr. Johnson since he was a baby. At that time his mother was "poorly," and Mrs. Schneider washed and did the hard work in the Johnson household. Mr. Schneider admitted that his wife had "pretty much," "practically" raised Mr. Johnson from a baby. Mrs. Johnson had known the Schneiders for many years. She had lived in Granger, a town of 2000 population, and had been a telephone operator there for 12 years. The Johnson and Schneider families visited back and forth, but Mr. Schneider and some of his witnesses did not know of Mrs. Schneider having any great deal of affection for Mr. Johnson, at least they had not noticed any particular attachment between them.

In January 1945, Mrs. Schneider was suffering from cancer and she was confined to her bed for much of the time from that date until her death on May 21, 1945. When Mrs. Schneider needed medicine, Mr. Schneider went to Memphis in his "Model T" and obtained it for her. Mr. and Mrs. Johnson came frequently to the Schneider [463] home. Mrs. Johnson would clean up the house, do the washing and assist in caring for Mrs. Schneider. Prior to Mrs. Schneider becoming bedfast, Mr. Johnson had taken her to the hospital at Keokuk, Iowa, and later went after her and brought her home. Mr. Schneider said that his wife paid Mr. and Mrs. Johnson "for the things they might have done for her," and that he paid for the services they rendered when his wife didn't pay them. After Mrs. Schneider died, Mr. Schneider remained in possession of the property described in the deeds. He lived alone, did his own cooking and looked after himself and his property.

According to Mr. Schneider, his wife was "almost dead" with cancer when the deed of March 12, 1945 was signed. Mr. Johnson and Mr. Jones, a notary public, were present. Three women were visiting with Mrs. Schneider, but Mr. Johnson told them to go in the other room and the door was closed. Witness had no conversation with Mr. Johnson at the time. No money or property or anything of value was paid or given to him or his wife for executing the deed. He admitted that he went to Memphis, Missouri, with Mr. Johnson on that date. They went to the office of Birney Reeves, an attorney and probate judge of the county. Witness went along because Mr. Johnson wanted him to go. He did not tell Judge Reeves to draw the deed. He did not know who drew it. He rode back to Granger with Mr. Johnson and Mr. Jones. After he signed the deed, his wife signed it, and he had it recorded. He had no recollection of having acknowledged the deed.

Concerning the deed of May 24, 1945, he testified that Mr. Johnson said to him, referring to the farm, "deed it to me and that will keep

the heirs away." He further said the Johnsons asked him to sign the deed. He did not put the revenue stamps on the deed or cause them to be put on. The deed was signed in the west room of his home. Mr. and Mrs. Harry Bidwell, Maggie Holcomb and Mr. and Mrs. Johnson were present. Judge Reeves took his acknowledgment. Witness further said that he sat up with his wife from January until May and that he was "completely worn out." He signed this deed a day or two after his wife was buried. He first saw the deed at his home in Mr. Johnson's possession. Judge Reeves "produced" it. No money or property or valuable consideration was paid for executing it. Later, he said that Judge Reeves came to the house alone, brought a typewriter with him and drew the deed in his presence, taking the description from an old deed. After the deed was executed, witness delivered the abstract of title to the property to Mr. Johnson. Subsequently, when the matter of paying drainage district taxes arose, witness paid his half of these taxes. Later, and prior to the institution of this suit, he went with Mr. Johnson to Hannibal to see Charles Rendlen, an attorney, but he remembered nothing else about the trip. In January 1946, he was out of money and had nothing to live on, so he asked the Johnsons to deed the property back to him. Mr. Johnson said he would, but didn't, and hadn't been in the house since. Witness had not at any time requested the Johnsons to take care of him. The suit was instituted August 2, 1946.

Mrs. Viola E. McClellan, a neighbor, testified that Mr. Schneider took care of his wife during her illness and that after her death "he was so broken up he would cry nearly all the time." He could not talk without crying. She had never seen him act that way before.

Mrs. O. P. Olson, a next door neighbor, testified that she helped take care of Mrs. Schneider and gave her medicines. Mr. Schneider aided in the care of his wife and was "badly broken up after his wife's death." He could not talk without crying.

Mrs. Fred Adams testified that Mrs. Schneider was "a very sick woman" in the first part of March 1945. From appearances she was suffering pain.

Mr. Oscar P. Olson, a next door neighbor, testified that when Mrs. Schneider died, Mr. Schneider was "very much run down. He was worn out. He hadn't had his clothes off, you might say, for four or five weeks." He was "very much broken up. You couldn't talk to him. It just broke his heart." Witness had purchased some property, on monthly installments, [464] from Mrs. Schneider. The contract provided that, in the event of her death, witness was "to settle with Charley Johnson." The payments were completed before Mrs. Schneider died.

Frank Vice, a neighbor of the Johnsons, testified that shortly after the deed of March 12, 1945 was executed, Mr. Johnson told him "he had made more that day than he had made for a long time; that

Mr. and Mrs. Schneider had signed the property over to him and his wife. . . . He said he felt proud, . . . he had made more that day than any other time in his life."

On defendants' behalf, Judge Birney O. Reeves, probate judge of Scotland County and a practicing attorney at Memphis, Missouri, testified that on March 12, 1945, Mr. Schneider and Mr. Johnson came to his office and Mr. Schneider asked him to prepare a deed for him and his wife to execute. "He wanted it done right then." He wanted to reserve a life estate and he told witness how to prepare the deed. The deed was prepared and delivered to Mr. Schneider. Witness did not recall that Mr. Johnson gave him any "instructions in any way, shape or form." Witness could not go to Granger to take the acknowledgment and he told Mr. Schneider to get Henry H. Jones. Witness prepared the deed of May 24, 1945 in Mr. Schneider's home. Mr. Bidwell had been to witness' office and had told him "what they wanted done." Witness replied that, if they wanted him to draw the deed, he would come to·Granger and talk it over with Mr. Schneider. A call was received the same evening and he went to the Schneider home. Mr. Bidwell, Mr. Schneider and Mr. Johnson were there. They sat on the front porch and talked in regard to drawing the deed. He talked to Mr. Schneider an hour, he had known him 20 or 25 years and didn't see anything wrong with him. Mr. Schneider wanted the deed drawn. Mr. Bidwell was present when it was drafted. Mr. and Mrs. Johnson were there before it was executed. The deed was prepared under the direction of Mr. Schneider, and as he wanted. He said "he didn't want his heirs to have the property." When the deed had been prepared, it was given to Mr. Schneider to read. Two women were called in. They went over the deed. After the deed was signed, witness told Mr. Schneider "he had executed it now and he would have to deliver it, but if it wasn't like he wanted it to stick it in the stove." Witness did not see any money paid, but the abstract and the deed were delivered in his presence. Mrs. Johnson was called in and the deed explained. She did not want the deed. "She said she would take care of Mr. Schneider just like she always had without getting anything for it." The revenue stamps were not on the deed when it was signed. The initials on the stamps were those of the recorder of deeds. Witness was employed as an attorney for defendants, but later withdrew because of the administration proceedings in his court. ·

Henry H. Jones, an attorney and notary public of Memphis, testified that Mr. Schneider asked him to come to the home and take the acknowledgment to the deed of March 12, 1945. He saw both Mr. and Mrs. Schneider sign the deed. He handed the deed to Mrs. Schneider, she read it, signed it without assistance and then acknowledged it. When asked if she was not "a pretty sick woman," he answered, "no."

Charles M. Johnson, a defendant, testified that he had known Mr. and Mrs. Schneider since he could first remember. He was called to the Schneider home on March 12, 1945 and Mrs. Schneider said, "I want this place deeded to you." She wanted his wife and him to have the property. She said she wanted to show her appreciation in some way. She asked that Birney Reeves draw the deed, so he went with Mr. Schneider to Memphis to Judge Reeves' office, where Mr. Schneider did the talking and Judge Reeves prepared the deed. Mr. Jones, a notary public, went with them to Granger, where the deed was signed and given to Mrs. Schneider. On May 24, 1945, Mr. Schneider sent for witness and, when he arrived, Mr. Schneider said "I want you to go to Memphis for me . . . I want to deed the farm to you and your wife. Have Birney Reeves come down." Mr. Schneider further said "he didn't want any of his damn relation to get hold of it." Witness came to Memphis with Mr. Bidwell [465] to see Judge Reeves and Judge Reeves said he would come down and talk to Mr. Schneider. The deed had been prepared before witness arrived at the Schneider home that evening. Witness gave Mr. Schneider $1.00 when the deed was delivered to him. Subsequently, a notice came with reference to drainage taxes and witness and Mr. Schneider saw Judge Reeves, who suggested a division, and witness paid his half of the tax. Later, Mr. Schneider got uneasy and worried whether the deed would hold and wanted to see Charles Rendlen, an attorney at Hannibal. Witness went along and Mr. Schneider asked the attorney if anything could be done "to make it safer, so no one else will get it." Mr. Rendlen said "it looked as solid as anything could be," but he prepared a paper and delivered it to Mr. Schneider. In the paper it was suggested that he see an attorney in Scotland County about making a will confirming the deeds. Witness first learned that Mr. Schneider was dissatisfied in January 1946, when he wanted the place back and when he told witness and his wife not to come to his home again. Prior to that time Mrs. Johnson had been going there twice a week to clean up the house and do the washing.

Dr. E. E. Parrish, a physician who attended Mrs. Schneider in her last illness, testified that her mental condition was normal when he saw her on April 20th and on different dates between May 14th and 20th, 1945. There was nothing to indicate unsoundness of mind, but she had been in some pain and he had given her hypodermics.

Mrs. Belle Cline, a resident of Granger, testified that she had heard Mrs. Schneider express her affection for Mr. Johnson, saying he was the best friend she had. Mrs. Schneider told witness that her property "shouldn't go to her relation."

Mrs Laura M. Kennedy testified that she stopped at the home on April 12, 1945, where she took notes from which she later wrote Mrs. Schneider's obituary. While in the home, Mrs. Schneider told her

that she had disposed of the property to the Johnsons, or was going to, and that things were planned so her husband wouldn't have to settle the estate after her death.

Mrs. Hazel A. Johnson, a defendant, testified that she had known the Schneiders since she was a child, and they were her close friends. Mrs. Schneider had had three "serious sick spells" and witness had helped take care of her and had done the washing. After Mrs. Schneider's last illness and death, witness "cleaned up the house." She was not present when the first deed was signed, although she had washed at Schneiders that day. She did not know of the second deed until Judge Reeves called her in and the transaction was explained. Witness told Mr. Schneider that they would take care of him the best they could without the deed, but Mr. Schneider replied that he didn't want his nieces and nephews to have the property. Witness never charged the Schneiders for anything she did for them and never expected any pay, they owed her nothing. She did not talk to Mr. Schneider about getting the farm. Witness and her husband paid nothing for it, except the one dollar Mr. Johnson gave Mr. Schneider in her presence the night the deed was signed. The revenue stamps were put on the deed, because they were told to do so. She was present when the deed was recorded. The stamps were obtained from the recorder and were attached and canceled. Mr. Schneider was hard of hearing, but "if he sat in the room he could always hear." Mrs. Schneider was not suffering severe pain in March 1945, although witness had been present when hypodermics were administered. From what the witness observed, Mr. Schneider took his wife's passing "like any one else" would, she observed him crying "once in awhile." The last deed was made the next day after Mrs. Schneider's funeral.

■ This is an equity case and it is our duty to review the evidence and reach our own conclusions as to its weight and value. However, where there is conflicting verbal testimony involving the credibility of witnesses who have appeared before the chancellor, this court will usually defer to his findings unless satisfied that they are against the weight of the evidence. Kingston v. Mitchell, (Mo. Sup.), 117 S. W. (2d) 226, 229; Ulrich v. Zimmerman, 349 Mo. 772, 163 S. W. (2d) 567, 571.

■ [466] Appellants seek the cancellation of two deeds. The cancellation of a deed requires the exercise of the most extraordinary power of a court of equity, and it ought not be exercised except in a proper case, and the evidence to justify cancellation should be clear, cogent and convincing. Edinger v. Kratzer, (Mo. Sup.), 175 S. W. (2d) 807, 813; Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2d) 59, 67; Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. (2d) 46, 54; Farr v. Lineberger, No. 40328, 207 S. W. (2d) 455.

Appellants rely on Ennis v. Burnham, 159 Mo. 494, 60 S. W. 1103; Vining v. Ramage, 319 Mo. 65, 3 S. W. (2d) 712; Finley v. Williams, 325 Mo. 688, 29 S. W. (2d) 103; Cook v. Branine, 341 Mo. 273, 107 S. W. (2d) 28; and Bovard v. Bovard, 352 Mo. 953, 180 S. W. (2d) 592. In each of these cases decrees favorable to plaintiffs were affirmed on appeal, but in this case the trial chancellor found the facts in favor of the defendants and denied the relief asked.

The petition charged fraud, lack of consideration and mental incapacity to execute the deeds. No facts were pleaded to show fraud, the evidence does not support the charge and the issue of fraud is not briefed on appeal. Appellants rely upon the alleged mental incapacity of the grantors and upon lack of consideration. The burden of proof rested upon appellants to establish by clear, cogent and convincing evidence the alleged mental incapacity of the grantors at the very time the deeds were executed. Lastofka v. Lastofka, supra; Ulrich v. Zimmerman, supra; Bushman v. Bushman, 311 Mo. 551, 279 S. W. 122, 131.

The evidence presented by appellants was most general in character. Mrs. Schneider was 76 years of age and "almost dead" with cancer. She was a "very sick woman," and was given medicines from time to time, and occasionally received a hypodermic. She was confined to her bed most of the time from January 1945, until her death on May 21st. The evidence is not specific and does not purport to expressly show that, on the particular date, she did not have sufficient mental capacity to understand the nature of the particular transaction and the effect of her act in signing, acknowledging and delivering the deed, or that she did not voluntarily do so. See Bushman v. Bushman, supra; Vining v. Ramage, supra. There was no hint in the testimony that she was rendered irrational, either by the disease from which she was suffering, or by its treatment, or that she was, on the particular date, lacking in mental capacity to understand the nature of the transaction in hand, or that she did not voluntarily enter into it and consummate it. Mental incapacity was not shown. Bennett v. Ward, 272 Mo. 671, 199 S. W. 945, 947; Masterson v. Sheahan, (Mo. Sup.), 186 S. W. 524, 526. While less mental capacity is required for a deed of gift than for a deed of bargain and sale in a business transaction, we need not discuss that matter here. See Edinger v. Kratzer, supra, (175 S. W. (2d) 807, 813) and Farr v. Lineberger, supra.

On the issue of Mr. Schneider's mental capacity on March 12, 1945, and on May 24, 1945, the evidence also is most general in character. It was not specifically directed to showing that he did not have sufficient mental capacity to understand the nature and effect of his acts in signing, acknowledging and delivering the deeds or that he did not understandingly and voluntarily do so. The evidence is that he was 78 years of age and that, after his wife's death, he was

"badly broken up." He would cry nearly all the time. He was "worn out" and "very much run down." Again, there is no hint in the testimony that he was rendered irrational by any of these matters or that his mind was affected or that on the particular days, when the deeds were signed and delivered, he was in anywise lacking in mental capacity to understand the nature of the transactions, or that he did not voluntarily enter into both and proceed to consummate them. He admitted that he had the first deed recorded; and that, after the second was signed and delivered, he delivered the abstract of title to Mr. Johnson. It further appears from his own testimony that during his wife's illness he assisted in taking care of her and made trips in his automobile to obtain medicines. He continued to act as constable and, since the death of his wife, he has been able to live alone and to cook and look [467] after himself and his property. He is now the qualified and acting administrator of his wife's estate. The evidence fails to show lack of mental capacity to make either of the deeds. We need not review respondents' evidence, but it does tend to show the motives that prompted the conveyances and the circumstances attending the execution of the deeds.

After a careful review of the whole record, we find no reasonable basis for overturning the chancellor's findings that the deeds were made voluntarily by the grantors, without fraud, compulsion or any undue influence and that the grantors were in their right minds and understood the nature and character of the instruments they were executing.

On the issue of lack of consideration, the first deed recited "one dollar and other valuable consideration" paid to the grantors, and there is no contention that there was any consideration other than love and affection, friendship and gratitude, a good consideration. Clark v. Skinner, 334 Mo. 1190, 70 S. W. (2d) 1094, 1097. The close and friendly relationship between the Schneiders and the Johnsons is confirmed by many witnesses. Mrs. Schneider had practically raised Mr. Johnson from babyhood, and she considered him her best friend. The Schneiders did not intend for their relatives to have their property and, as owners of the described property, they could give it, or any part of it, to the Johnsons and could consummate the gift by deed. Blackiston v. Russell, 328 Mo. 1164, 44 S. W. (2d) 22, 27. The consideration expressed in the deed was open to explanation, but not to defeat the operative or granting clause of the deed. Chambers v. Chambers, 227 Mo. 262, 287, 127 S. W. 86; Clark v. Skinner, supra. Respondents' evidence tends to show that a gift was intended and there is no substantial evidence to the contrary. The fact that no money, property or valuable thing was given in exchange for the deed will not defeat it, nor constitute ground for setting the same aside, where the evidence shows an intention to

make a gift of the property to the grantees.   Parker v. Blakeley, 338 Mo. 1189, 93 S W. (2d) 981, 988.

The second deed, which was executed by appellant Schneider alone, recited a consideration of "one dollar and other valuable consideration as herein stated" and then set out the alleged agreements on behalf of the grantees.   No question was raised concerning the acceptance of the deed by the grantees or of their assumption of the obligations therein contained. . Respondents put the deed of record, claim thereunder and have refused to reconvey.   There is no suggestion that they are not ready, willing and able to dischárge the obligations assumed.   Appellant Schneider concedes that he has made no request of the Johnsons, other than for a reconveyance of the property.   On the record presented, the deed was supported by a sufficient consideration and, even if inadequate, the operative effect of the deed cannot be defeated in the absence of fraud, mistake, undue influence or coercion, none of which appear from this record. Ruff v. Young, 354 Mo. 506, 190 S. W. (2d) 208, 211; Wells v. Kuhn, (Mo. Sup.), 221 S. W. 19, 20; Chambers v. Chambers, supra; Masterson v. Sheahan, (Mo. Sup.), 186 S. W. 524, 526.

The judgment should be affirmed.   It is so ordered.   *Bradley, C.,* absent; *Van Osdol, C.,* concurs.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court.   All the judges concur.