Lem Binnion, Appellant, v. Lucille Clark, John Jackson and Henry Warten, Respondents, No. 40985—221 S. W. (2d) 214.

Division Two, May 9, 1949.

Rehearing Denied, June 13, 1949.

*L. S. Dewey* and *Robert Stemmons* for appellant.

*Ralph Baird* and *Norman, Foulke & Warten* for respondents.

204

BARRETT, C.—This cause originated when the plaintiff, Lem Binnion, instituted an action to set aside two quitclaim deeds, one from himself to his niece, Lucille Clark, dated March 9, 1945, and the other from Lucille to her lawyer. The theory of his action was that Lucille, through the agency of her lawyer, was guilty of fraudulently concealing material facts in procuring the deed. 23 Am. Jur., Secs. 76-83, pp. 850-863. The fraud alleged and relied upon was that, he being in Washington, the defendants wrote and represented to him that tax title buyers had purchased the property at a tax sale, that the property was run-down and in need of repairs and if he would execute a quitclaim deed to Lucille for the recited consideration of one dollar they would clear up the title to the property in Lucille, concealing from him or failing to reveal to him the fact that the property had sold at the tax sale upon a bid of $800.00, leaving an overplus of $704.60 which he was justly entitled to receive. They enclosed a check for $2.50 to pay for the notarization of the deed. The property is of the value of $2,000.00. He also joined his stepfather, John Jackson, in his suit but the only allegation concerning him is that he was living in the property with Lucille and that they had not paid rent and had permitted the property to deteriorate and finally to sell for taxes.

John Jackson did not answer Lem's petition, nor did he join in any answer or cross-petition or respond to any cross-petition. But Lucille and the lawyer filed an answer and a cross-petition. In the first place, they attacked Lem's title. They alleged that the plaintiff, after serving about thirty years in the Idaho penitentiary, returned to Joplin in 1938 and by fraud, undue influence and duress compelled and caused his aged mother, Lydia Ann Jackson, age 84, to deed the property to him. They alleged, although his stepfather, John Jackson, had not signed the deed, that the plaintiff had falsely procured his purported acknowledgment to the deed and had recorded it. They alleged that there was no consideration for his quitclaim deed and in any event that it was void and did not convey any title to him. They alleged that Mr. and Mrs. Jackson, before Mrs. Jackson's death, had instituted a suit to set his deed aside. That suit was dismissed for failure to prosecute, probably after Mrs. Jackson's death.

In the second place, they denied that they were guilty of any fraud in connection with the deed from Lem to Lucille and they charged that his deed conveyed whatever interest he may have had in the land to her. They particularly denied that they were guilty of any fraudulent concealment concerning the $704.60 overplus from the tax sale.

In the third place, they alleged that Martha Lindstromberg, through her agent and brother-in-law, J. A. McIntosh, purchased the property at the tax sale upon the bid of $800.00, but they alleged, for specified reasons, that the tax sale was void. They alleged that the collector had no authority to sell the property as he did and that the treasurer had no authority to receive the overplus from the sale. The collector, the treasurer, J. A. McIntosh and Martha Lindstromberg were all made parties to the suit. Lindstromberg and McIntosh filed answers to the cross-petition and alleged the validity of her tax certificate. The treasurer and the collector appeared as witnesses and sought, apparently, to justify and validate the tax sale by their testimony but they did not file any pleadings and so far as this record is concerned were not represented by counsel.

In the fourth place, they alleged that Lydia Ann Jackson, Lem's mother and Lucille's grandmother, acquired title to the property in January 1938 and died in August 1938 leaving a will which was duly probated. Despite the fact that the will gave her husband a life estate and provided that the property be sold upon his death and the proceeds ''divided between my heirs,'' they alleged that Mrs. Jackson devised her property to her husband, John Jackson, for life and at his death to her seven sons and daughters and one grandson. One of the seven sons is Lem and one of the daughters is Lucille's mother, Daisy Bond. The defendants in their cross-petition allege that these eight named parties are the present owners of the property except

Lem who had conveyed his one-eighth interest to Lucille. Daisy Bond lives in Joplin and was served with process but defaulted. The other sons and daughters or their descendants and the grandson live in California and they were all served by publication but defaulted.

The trial court found that Lem was not entitled to the relief prayed for and dismissed his petition. The court found for Lucille and her lawyer upon their answer and cross-petition except he found that they were not entitled to have the quitclaim deed from Mrs. Jackson to Lem set aside. The court found that Lucille was the fee simple owner of the land by reason of the quitclaim deed from Lem to her. He found, however, that her ownership was subject to her conveyance to her lawyer and the terms of a written contract with him, even though there is no such contract in the record. The court found that the tax sale was void and decreed that the entire bid of $800.00 be restored to the tax sale purchaser, Mrs. Lindstromberg, and McIntosh. It was decreed that they had no interest in the land by reason of the tax sale. All the other parties having defaulted it was decreed that they had no interest in the land. And thus was the whole title quieted in Lucille, subject to the conveyance to her lawyer, and the two quitclaim deeds to and from Lem upheld.

Upon this appeal Lem contends that he proved the fraud alleged as against Lucille and that this court should cancel his deed to her. Since her lawyer has a quitclaim deed it is urged that he cannot be a bona fide purchaser and his deed likewise should be set aside. He also urges that the court erred in setting aside the tax sale and insists that the lien of the tax certificate be restored to. the end that he may exercise his option to redeem the property or receive the surplus of $704.60.

At the outset we are confronted with the respondents' contention, since only Lem appealed, that he may not urge as grounds for reversal any matters affecting parties who did not appeal, such as the validity of the tax sale and the rights of the collector, the treasurer and Mrs. Lindstromberg. Boatmen's National Bank v. Fledderman, 352 Mo. 763, 769, 179 S. W. (2) 102, 104. Since Lem is the only appellant and the only person who filed a motion for a new trial it is insisted that this court is confined to the single issue presented by his motion and that is whether the deed from him to Lucille was obtained by fraud. This issue they say, upon this trial anew, depends entirely on the credibility of the witnesses and that this court should defer to the trial court's finding on the facts. Hart v. T. L. Wright Lbr. Co., 355 Mo. 397, 402, 196 S. W. (2) 272, 275; Mo. R. S. A., Sec. 847.114(d). In general these contentions are applicable. However, this is an equity suit and this court is not so narrowly limited in its trial anew and disposition of the cause as the respondents contend. It is this court's duty to review the evidence upon the merits and if possible apply and enforce the ap-

propriate equitable principles. Shepard v. Shepard, 353 Mo. 1057, 1061, 186 S. W. (2) 472, 474; Jones v. Peterson, 355 Mo. 242, 256, 72 S. W. (2) 76, 84; Friedel v. Bailey, 329 Mo. 22, 38, 44 S. W. (2) 9. In this connection it should be noted that we accept this appeal as it is presented but in doing so we do not decide or in any way pass upon the question of Lucille's being the proper party to raise the question of the invalidity of Mrs. Jackson's deed to Lem upon the grounds set forth in the cross-petition (30 Mich. L. R. 420; Thorp v. Miller, 137 Mo. 231, 38 S. W. 929), or upon the question of whether or not, upon the allegations contained in the cross-petition, the judgment and decree entered affected and as a matter of fact determined the interests of the devisees under the will of Lydia Ann Jackson. But even under these broader limitations it is neither possible nor proper in the circumstances of this case to decree that the appellant is justly the rightful owner of the property.

In passing upon the issue of fraud, if that was a factor in the court's decision, and in refusing to cancel the deed to Lem from his mother and his stepfather and in upholding the deed from Lem to Lucille the trial court impliedly found that neither party was guilty of the fraud alleged and we defer to that finding. But even if we did not so defer it does not necessarily follow that he would be entitled to recover. In the first place, to grant the relief he asks—the option to redeem or to claim the overplus—it would be necessary to validate the tax sale and reinstate the lien of the tax certificate as he argues we should. Aside from the legal and factual difficulties involved in so doing, however, there is the further fact that neither Mrs. Lindstromberg nor the collector nor anyone directly aggrieved by this phase of the decree has appealed and it is not pointed out how or in what right the appellant may complain of the decree in this respect.

Neither Lem nor Lucille claim the property by way of a gift, in the sense that the term "gift" is usually employed. Neither do they claim that they purchased it and gave actual value or any value or consideration for their quitclaim deeds. According to Lem his mother merely deeded the property to him to hold as long as she lived and after her death he was to "hold it" for himself. Lucille testified that she stayed with the Jacksons and waited on them but she makes no claim to the property by reason of that fact. She said that she made certain repairs on the property but she did not claim any lien on the property by reason of having done so. She told Lem that the property was run-down and in need of repairs but the fact was asserted more as an argument why he should make the conveyance and not as a ▮▮▮ reason or consideration for his conveyance. The result is that both quitclaim deeds, the deed from the Jacksons to Lem and the deed from Lem to Lucille, merely transferred the title without consideration.

But a voluntary conveyance, one without any valuable consideration, (Bump, Fraudulent Conveyances, Sec. 238, p. 278) is valid as between the parties. Chambers v. Chambers, 227 Mo. 262, 287, 127 S. W. 86; 16 Am. Jur., Sec. 57, p. 472. In all the instances in which conveyances have been set aside there has been some other compelling circumstance in addition to mere inadequacy or lack of consideration. Morriso v. Philliber, 30 Mo. 145, Schneider v. Johnson, (Mo.) 207 S. W. (2) 461, 467; 9 Am. Jur., Sec. 24, p. 370; 16 Am. Jur., Sec. 33, p. 456; annotations 13 L. Ed. 952; Ann. Cas. 1914B, p. 1042; L. R. A. 1916D, p. 382. It is true that the court in Derby v. Donahoe, 208 Mo. 684, 106 S. W. 632 and Frey v. Onstott, 357 Mo. 721, 210 S. W. (2) 87, approvingly quoted from Kerr on "Fraud And Mistake" the statement that "But inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for canceling a transaction. In such cases the relief is granted not on the ground of the inadequacy of consideration, but on the ground of fraud as evidenced thereby." Kerr, "Fraud And Mistake," p. 187. But Kerr on "Fraud And Mistake" is an English text and that is the rule in England, as the annotators have pointed out. Ann. Cas. 1914B, l. c. 1043. But in every instance in this jurisdiction and elsewhere, so far as we have been able to discover, including the Derby and Frey cases, there was some additional compelling circumstance, and no conveyance has been set aside, as between the parties, merely because it was voluntary. Ruff v. Young, 354 Mo. 506, 512, 190 S. W. (2) 208, 211; Robinson v. Field, 342 Mo. 778, 786, 117 S. W. (2) 308, 312; Clark v. Skinner, 334 Mo. 1190, 1196, 70 S. W. (2) 1094, 1097. It follows, in the second place, that these two quitclaim deeds may not be canceled or set aside for that reason alone.

All in all, as between the immediate parties, Lem and Lucille, the equity of the situation is that they stand on about an equal footing.

The judgment, therefore, is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. All the judges concur.