Billye New ALLAN, Plaintiff-Appellant,

v.

Thomas G. ALLAN, Defendant-Respondent,

v.

Fannie I. ALLAN, Third-Party Defendant-Respondent.

No. 49223.

Supreme Court of Missouri,

Division No. 1.

Jan. 14, 1963.

Motion for Rehearing and to Transfer to Court En Banc Denied Feb. 11, 1963.

Douglas & Douglas, Neosho, for appellant.

Emerson Foulke, Joplin, for respondent.

HOLMAN, Commissioner.

Plaintiff's petition in this cause was in two counts. In the first count she sought a divorce from defendant, and in the second count she prayed for a decree for the partition and sale of a 74-acre farm which had been conveyed to plaintiff and defendant by defendant's parents, John A. and Fannie I. Allan. Defendant filed a cross bill alleging that plaintiff was addicted to drunkenness and, upon the trial, was granted a decree of divorce from plaintiff. No appeal has been taken from that decree. John A. Allan died prior to the filing of this suit. Defendant, for answer to Count II, alleged that "a consideration for said conveyance was that the defendant and plaintiff care for and provide for the defendant's father and mother for and during their natural lives and it was understood and agreed between the parties to said conveyance at the time said conveyance was made that the defendant's father and mother have and retain a life estate in the real estate described; * * * that through an oversight and mutual mistake on the part of all the parties

* * * the said conveyance failed to recite that the grantors retained life estate in the real estate conveyed." He also filed a motion seeking to have his mother made a third-party defendant and that motion was sustained.

Fannie Allan, in her answer, adopted the allegations of defendant's answer and prayed that the court "reform said deed so as to recite that she, the said Fannie I. Allan, has and maintains a life estate in the real estate described in count two of the plaintiff's petition or in the alternative that said deed be set aside for failure of consideration." The trial of Count II resulted in a judgment setting aside the aforementioned deed "because of a failure of consideration to support the deed in that plaintiff Billye New Allan and the defendant Thomas G. Allan have failed and refused to carry out and fulfill the consideration for said deed." Plaintiff has duly appealed from that judgment.

Plaintiff and defendant were married on November 27, 1956, and separated July 15, 1961. The deed in question, executed September 5, 1957, was a warranty deed in usual form and recited a consideration of "one dollar and other good and valuable considerations." Because of illness John A. Allan was unable to sign his name to the deed and therefore executed it by mark which was witnessed by T. H. Litton and Ray E. Garber. Mr. Allan died August 14, 1958. Both plaintiff and defendant concede that no money was paid as a consideration for the conveyance.

Defendant testified that he had lived at his father's home during the period of his marriage to plaintiff because his father had been quite ill and it was necessary that he help care for him; that his father was bedfast, had no control over his elimination, and had required a great deal of care for some years before his death; that he had made an agreement with his father and mother to the effect that they would deed him the farm if he would take care of his father and make a home for his mother as long as they lived; that his wife was not present at the time the deed was made because she was in the hospital; "I insisted her name be put on it; I didn't have an idea in the world we would ever have any trouble. Q. You did understand they were deeding it to you and your wife, though? A. * * * With the specifications that we make a home for them as long as they lived. Q. That wasn't specified in the deed? A. Because my father and I have always done just exactly what we told one another we would do."

Defendant further testified that he had gone to the office of his attorney, Mr. Foulke, and instructed him to prepare the deed; that he didn't tell Mr. Foulke anything about any agreement, "just told him to make out a deed"; that Mr. Foulke was the notary public who took the acknowledgment of the grantors; that he had helped his mother in taking care of his father until his father died, but that plaintiff had not assisted in any way in caring for his father or mother; that his mother was 80 years of age, and that at trial time he and his mother were still living together on the farm here involved.

Plaintiff testified that she was not present when the deed was executed and that her husband had later told her that "his dad gave it to him for taking care of him when he was sick"; that she had heard nothing about "Tom's mother and father having a life estate in this real estate." In regard to defendant's father, this witness stated, "his mother and I took care of him and Tommie helped. We all took care of him."

Fannie Allan (hereinafter sometimes referred to as respondent) testified that she and her husband had lived on the farm in question for 28 years. In regard to the reason for the execution of the deed this witness stated that she, defendant, and her husband "talked it over and Tom had to quit farming because he couldn't take care of his dad and do justice to both; and we just decided we had better deed the farm to him because he was losing out all the way

around. The other boys had gotten more than their share." She further stated that she didn't know that plaintiff's name was on the deed, "but we signed it to Tom with the understanding that I was to always have a home there as long as I lived."

One of the witnesses to Mr. Allan's mark was Ray Garber who was a brother of Fannie Allan. He said there was some conversation before the deed was signed and that defendant's father stated that "they would deed it to Tom provided it was their place, their home as long as they lived." The other witness who signed the deed was Thomas Litton who testified that on the occasion the deed was signed "Tom's daddy did ask him to take care of him and his mother as long as they were alive. Q. Was there anything said about them living there as long as they lived? A. Well, I wouldn't be positive about that part of it. Like I said, I couldn't say word for word, but he did ask them to take care of him."

As heretofore stated, defendant and third-party defendant, in their pleadings, sought as alternative relief (1) the reformation of the deed to recite that the grantors retained a life estate in the real estate conveyed, which recital was omitted as a result of a mutual mistake on the part of all the parties, and (2) that said deed be set aside for failure of consideration.

■ At the outset of our consideration of this appeal we deem it appropriate to quote certain established rules applicable to cases of this nature. "[A] mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. * * * [A]nd that mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence." Walters v. Tucker, Mo.Sup., 308 S.W.2d 673, 675, 679. " 'A mutual mistake presupposes a prior or preceding agreement between the parties, and, this agreement of necessity must be shown.' Dougherty v. Dougherty, 204 Mo. 228, 237, 102 S.W. 1099,

1101." Zahner v. Klump, Mo.Sup., 292 S. W.2d 585, 587. "The cancellation of a deed is the exercise 'of the most extraordinary power of a court of equity, which ought not be exercised except in a clear case,' Lastofka et al. v. Lastofka, 339 Mo. 770, 99 S.W. 2d 46, loc. cit. 54, and the evidence to justify cancellation should be clear, cogent, and convincing." Edinger v. Kratzer, Mo.Sup., 175 S.W.2d 807, 813. It is elementary that in this case the burden was on the defendant and the third-party defendant to present evidence which, when tested by the quoted rules, is sufficient to warrant the relief sought.

We have concluded that respondent is not entitled to a judgment granting either reformation or cancellation.

■ In order to prevail on the issue of reformation it is necessary to show that the mistake was mutual, i. e., common to both parties. In that connection we should perhaps state that we are convinced that there was an agreement between defendant and his parents that they should have the right to occupy the farm as a home as long as either lived. However, it does not appear to have been agreed that that provision would be written into the deed. No witness testified that there was any agreement or understanding that the grantors would reserve a life estate in the deed. Moreover, it clearly appears that defendant did not intend that the deed specify that his parents reserved a life estate. He did not instruct Mr. Foulke to place that provision in the deed and explained that it was not specified therein "because my father and I have always done just exactly what we told one another we would do." Since there was no mutual mistake on the part of respondents in regard to the provisions of the deed their claim for relief in the nature of reformation must fail.

■ We are also of the opinion that the evidence is insufficient to warrant the cancellation of the deed for failure of consideration. The decree of the trial court was based upon a finding that the plaintiff and

defendant "have failed and refused to carry out and fulfill the consideration for said deed." The quoted finding would seem to indicate that the trial court was of the view that the grantees had failed and refused to care for and make a home for defendant's parents.

Plaintiff did not make any agreement in connection with this conveyance. However, since she has accepted the benefits thereof we will assume (but do not decide) that she is bound by the agreement between defendant and his parents. The evidence does not indicate, however, that plaintiff was included in the agreement. Both of the respondents testified that the agreement was that "he" (defendant) was to take care of his parents. We find from the evidence that defendant had fully performed his agreement from the time it was made until trial time. It is true that if plaintiff obtains a partition decree and the farm is sold, respondent will be precluded from continuing to occupy the residence as a home, but that prospective development does not afford a sufficient basis for a judgment canceling the deed because of "a failure of consideration." Anderson v. Gaines, 156 Mo. 664, 57 S.W. 726.

It might be said that there was no consideration for the conveyance of an interest in the property to plaintiff, but apropos to that subject we have stated that "a voluntary conveyance, without valuable consideration, is valid as between the parties. Binnion v. Clark, 359 Mo. 202, 221 S.W.2d 214, 217, and authorities there cited. To set a deed aside or otherwise invalidate it there should be 'some other compelling circumstance' besides a mere lack of consideration (id). And see 26 C.J.S., Deeds, § 16; Robinson v. Field, 342 Mo. 778, 117 S.W. 2d 308; Stoops v. Stoops, Mo., 276 S.W.2d 188; 16 Am.Jur., Deeds, § 57." Rubinstein v. Rubinstein, Mo.Sup., 283 S.W.2d 603, 607.

The primary contention of respondent is that plaintiff, by the filing of this suit for divorce and partition, has repudiated the agreement defendant made with his parents, and has "placed it beyond" the power of plaintiff and defendant to perform any such agreement and hence the deed should be set aside. The cases relied upon by respondent to support that contention are Wagner v. Hicken, Mo.Sup., 232 S.W.2d 531, and Hood v. Throop, Mo.Sup., 280 S. W.2d 106. In each of those cases the plaintiff deeded property to defendants in consideration of a promise to care for the grantor. The proof showed that defendants had failed to perform. In each case the deed was set aside, but the court stated that the evidence supported a finding that defendants never intended to perform and therefore a fraud had been practiced upon the plaintiff. In the case before us there was no evidence of fraud or bad faith on the part of either grantee. The agreement had been performed until the time of trial and the development which may preclude future performance was the result of the domestic difficulties of plaintiff and defendant. There is no evidence that either of the grantees contemplated filing an action for divorce and partition at the time of the conveyance. We are therefore of the opinion that the cases cited involve such different factual situations that they do not support the judgment herein.

As indicated, we rule that respondent, under the evidence here presented, is not entitled to a judgment setting aside the deed.

The deed before us conveyed the land to "Thomas G. Allan and Billye New Allan, husband and wife." It therefore vested the title in the grantees as tenants by the entireties. Upon the entry of the decree of divorce they each became the owner of an undivided one-half interest therein as tenants in common and either was entitled to partition the same. Jones v. Jones, 325 Mo. 1037, 30 S.W.2d 49. Plaintiff had sought a decree of partition in the second count of her petition, and, under the facts here shown, was entitled to that relief.

The judgment appealed from is reversed and the cause is remanded for further pro-

ceedings in accordance with the views herein expressed.

COIL, C., not participating.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by HOLMAN, C.. is adopted as the opinion of the court.

All concur.