James P. RADFORD, Respondent,

v.

Robert RADFORD and Mary Catherine Radford, D. E. Black and State Bank of Poplar Bluff, Missouri, Appellants.

No. 50694.

Supreme Court of Missouri,

Division No. 2.

March 8, 1965.

Motion to Retax Costs Denied April 12, 1965.

Byron Kearby, Poplar Bluff, for respondent.

Henson & Henson, Poplar Bluff, for appellants.

STORCKMAN, Presiding Judge.

This is a suit for an accounting and for cancellation of a deed to 70 acres of farm land conveyed by the plaintiff to his son. The trial court held the deed to be "void for the reason of a total failure of consideration", set it aside and vested the title in the plaintiff. On appeal the defendants' principal contention is that the decree is not supported by the evidence.

Prior to the conveyance in question, the plaintiff James P. Radford was the owner of 140 acres of land in Butler County on which he lived with his wife Belle Radford. They had two sons, Robert and Denver Andrew. For convenient distinction, the plaintiff James P. Radford will sometimes be referred to as Mr. Radford and his sons as Robert and Denver. The appellants, Robert and his wife Mary Catherine, were the only active defendants at the time of the trial. The defendants D. E. Black and State Bank of Poplar Bluff, Missouri, were joined by reason of their interests in a note secured by a deed of trust on the land in dispute. The note was paid off prior to trial and the defendants Black and State Bank did not participate further in the proceedings.

Mr. Radford acquired 100 acres of the land probably about 1936. Robert entered the United States Naval Service on October 21, 1942. He became 21 years of age on December 8, 1942, about two and a half months after he entered the service. Denver, who was about two and a half years older than Robert, went into the Military Service in the spring of 1942. While they were in the service, both boys made allotments of about $35 per month for the support of their parents. Robert was in the service three years, three weeks and one day. He was discharged about November 12, 1945. He married his wife Mary Catherine in 1944. While Robert was in the service, probably in 1945, his father purchased a 40-acre tract adjoining the farm, bringing the total to 140 acres. Robert testified that before he went into the Navy he talked to his father about the 40-acre tract saying that if the owner ever wanted to sell it and his father could buy it he hoped his father would because he, Robert, would like to own it some day. Mr. Radford testified he could not remember any such conversation. When Robert got out of the service, he came back to the farm and at least intermittently lived there helping his father with the farm work.

In 1953, however, both Robert and Denver were working away from home. Robert was driving a bus for the St. Louis Public Service Company in St. Louis. Pursuant to a call from their parents, both sons came to Poplar Bluff with their wives on April 8, 1953. On that day all of the parties and their wives went to the office of John C. Corrigan, Jr., where deeds were prepared and were executed by Mr. and Mrs. Radford conveying 70 acres of the farm to Robert and 70 acres to Denver. Robert's 70 acres included the 40 acres acquired in 1945. Mr. Radford testified he made a "division" of the land saying, "I give Robert the north. forty, signed a deed

to the north forty and thirty acres off of the hundred acres." The remaining 70 acres he deeded to Denver.

The general warranty deed to Robert, in evidence as plaintiff's Exhibit 14, recites a consideration of $2,000 paid to the grantors, Mr. and Mrs. Radford, by their son Robert, "the receipt of which is hereby acknowledged". Following the description of the real estate, the deed as shown by Exhibit 14 states: "Subject to a note and deed of trust given to State Bank of Poplar Bluff which the said Party of the Second Part assumes and agrees to pay. All taxes and assessments due and payable in the year 1953 and following years are to be paid by the said Party of the Second Part."

Mr. Radford was 74 at the time of the trial on February 11, 1964, and it would appear that he was 63 or 64 years of age in 1953 when the deed was executed. He could neither read nor write and signed the deed with his mark. There is no contention, however, that he did not know the contents of the deed or that its execution by him and his wife was the result of any importuning, persuasion, or undue influence on the part of either of his sons or anyone else. The dominant issue in the case is what the consideration of the deed was and whether it was performed. It is agreed that neither the recited consideration nor any other sum of money was paid at the time the 70 acres was conveyed. The deed was recorded on April 9, 1953, the day following its execution.

There is a house on the 70-acre tract, but it is not clear how long and when Robert and his family lived there after the deed was executed. It does appear that he and his family moved to Bossier City, Louisiana, in March 1960 where they were living at the time of the trial. He was working there as a truck driver. Mr. Radford and his wife Belle were living in a house on Denver's farm when the deeds were made and they continued to live there probably until the latter part of 1959 or early part of 1960 when they moved to Poplar Bluff

in order to be close to medical services for Mrs. Radford who was in ill health. She was six and a half years older than Mr. Radford. She died in Poplar Bluff on January 15, 1961. Mr. Radford did not return to his home on the farm but boarded in Poplar Bluff until about June 1961 when he remarried and moved with his new wife to Dent County near Salem. In August 1961 Robert and his family visited his father and his wife in Dent County and learned that his old age assistance benefits were likely to be terminated because he had moved from Butler County. Later they learned through Denver that the benefits had been discontinued. Beginning about November, Robert and his wife sent Mr. Radford a series of five checks of $20 each which were cashed. The last one was dated April 24, 1962, and shortly thereafter this suit was instituted. The facts stated thus far are without substantial dispute

The evidence in the case consisted of the testimony of Mr. James P. Radford, Robert Radford and his wife Mary Catherine, and letters and copies of checks written by Mary Catherine. Denver Radford whose name was frequently mentioned was not called as a witness by either party. The value of Robert's 70 acres was variously estimated. Mr. Radford testified it was worth $100 per acre. Robert's opinion was that the tract would not sell for more than $3500 which would be at the rate of $50 per acre. According to Mr. Radford the cost of the 40 acres was $1500 when it was purchased about 1945 which would be an average cost of $37.50 per acre. About 50 acres of Robert's tract is in cultivation; the "place has got 5.6 acres of cotton base on it." The crop rent from Robert's farm was about $300 per year payable in the fall which was said to be a reasonable rent. Taxes were about $60 or $62 per year. The rentals and taxes were considered to be the same over the years in question. The value of the 70 acres calculated on the basis of capitalized earnings would be much closer to Robert's notion of its worth than that of his father. The value of the tract, how-

ever, is not important except as it bears on the reasonableness of the contentions of the parties.

Contrary to the recitals in the warranty deed with respect to consideration, the petition alleges that the conveyance was made "on the condition and for the consideration that the said Robert Radford would pay off and discharge a deed of trust and note against said property in favor of the Bank of Poplar Bluff, Poplar Bluff, Missouri, for the approximate sum of Sixteen Hundred Dollars ($1600.00) and that the defendant Robert Radford would pay to plaintiff for and during the rest of his natural life the yearly rent from said premises, however, in any event, not less than the sum of Twenty Dollars ($20.00) per month." There was no evidence to support the allegation that a minimum of $20 per month was to be paid. Further, the evidence disclosed that the note of $1600 was secured by a deed of trust on the entire 140 acres and it was paid off equally by the rents from the two 70-acre tracts.

Mr. Radford testified that after the deeds were made and recorded the rent checks were made payable to Robert and Denver; that the "understanding" was that they "was to pay off what was against it and give me the rent on it as long as * * * me and my wife lived"; that "I was to collect the rent and pay the taxes and that debt that I owed at the bank, why the banker wouldn't take the boys, and said I am going to hold your dad and the land for the debt, and you can pay him the rent and he can pay this debt off." Mr. Radford further testified that Robert quit giving him the rent checks after the note was paid off which was about three years after the land was deeded; that he did not at any time ask Robert to give him the rent money from the time the note was paid off until the suit was filed although he saw Robert during that period of time; that he, the plaintiff, drew an old age pension until it was cut off when he "got married to this last woman" and moved to Dent County. Mr. Rad-

ford still had some of his furniture in the house on Denver's place.

Robert testified that when Denver and he were called to Poplar Bluff for the making of the deed, "My mother was already drawing the Old Age Pension, and in order for my daddy to draw it too, he could not draw it and still own the farm, so therefore he deeded it to Denver and I, so that he would be able to draw the Old Age Pension." Robert's version of the agreement about the payment of rents was: "Daddy was to collect the rents until the money that he owed at the bank was paid. The rent was to come to Denver and I unless Denver and I had made an agreement between ourselves if daddy needed the rent, he could have it. It was never refused, the rent." Mr. Radford knew about the agreement between Robert and Denver and may have been present when it was made. Robert further testified that he kept the rent checks from his farm "because my daddy said he didn't need the rent on the farm, because if he could collect the rent they would take that amount away from his check." Robert and his wife found out, apparently from Denver, that his father had lost his old age pension and that was the reason they started sending him monthly checks of $20 each. Robert further testified that he would be willing to give his father the rent from previous years if he was able to do so, and under interrogation by the court stated: "From the time he lost his pension and needed it, I say I owe him the rent. Before he lost his pension, he said he did not want the rent." Robert also testified that his father was not drawing old age benefits on April 8, 1953, but he deeded the land so he would be eligible to do so. Robert did not know when his father's pension was discontinued but it was sometime after he married his second wife. After the 70 acres was deeded to him, Robert built two more rooms onto the two-room house originally there; he cleared about five or six acres of land, put up fences, and put in an orchard. The cost of the improvements to the house was about $500, cost of the

orchard $300, and he did not know what the fencing cost. Mr. Radford admitted that Robert made some improvements to the house and cleared some additional land.

Mary Catherine Radford testified that she and her husband lived on the farm for several years after it was deeded to them and prior to March 1960; that Robert and she visited Mr. Radford in August following his remarriage at which time there was talk that he might lose his pension, but thereafter they heard nothing from Mr. Radford directly. They had about three letters from Denver. Three letters written by Catherine Radford and signed "Robert & family" were identified and put in evidence by the plaintiff. They were addressed to Mr. and Mrs. J. P. Radford. The letter postmarked November 26, 1961, stated that this made five letters that she had written without an answer and that they learned from Denver and Doris that Mr. Radford had lost his pension. The letter further stated: "Dad, we can't give you the rent from our farm because we had to borrow money on our farm for our two trips to Poplar Bluff, Mom's funeral expenses & also money to make our payments here while he [Robert] was [out] of work. Our crop rent has to go on that debt." The letter further asked if Mr. Radford would prefer that they send some money each month or borrow the money and send as much as the crop rent was, and that the equivalent of the crop rent would be about $20 per month.

Mary Catherine's letter dated December 11, 1961, also complained about not receiving any reply to previous letters and not knowing if a box she sent had arrived; she again asked Mr. Radford how he wanted the money sent. In conclusion the letter stated: "Dad you may not care for us but one thing for sure we care for you and love you and want to help you. Regardless of what you have said about us & to us. God gives us a forgiving mind & loving in our hearts for you now & always." The letter written April 24, 1962, among other things, contained this statement: "Dad I ask [sic]

you once before if you needed the $20.00 a month we have been sending to you and you didn't answer, I'll ask again. Do you need the money we have been sending to you? I'll send you a check this month but if we don't hear from you this will be the last one we will send until we get some work done on our house. Robert isn't working but 3 days a week and he thinks he can do the work himself while he is off from work so much. But if he can or can't do it himself it has to be done before we fall through the porch and the windows fall out." There was no answer to the letter and a short time later this suit was filed.

The decree entered on February 11, 1964, held that the general warranty deed dated April 8, 1953, "from the plaintiff to the defendant Robert Radford is void for the reason of a total failure of consideration and that said conveyance be, and the same is hereby vacated, set aside and annulled and declared of no force and effect". The decree further found that the title to the real estate was vested in the plaintiff, that the defendants Robert and Mary Catherine Radford had no right, title or interest in it, ordered them to deliver immediate possession of the premises to the plaintiff and assessed the costs against them.

In support of the decree the respondent urges that the plaintiff proved a total failure of consideration and a lack of consideration; that there is "sufficient evidence of a badge of fraud" because Robert immediately caused the title to be put in the joint names of him and his wife as an estate by the entirety and failed to pay the rents to his father; and that fraud and lack of consideration are interwoven.

The trial court made no finding of fraud and from our examination of the record we have concluded that the evidence does not prove or permit an inference of fraud. The date when the title was put in both names is not shown. It does appear that Robert and his wife made a loan with the property as security on December 7, 1960, but the loan was paid off prior to

trial. Neither Robert nor his wife claimed any advantage or made any defense based on the fact that Robert and his wife held the property as tenants by the entirety. It is admitted that Robert turned over the rents to his father until his share of the $1600 loan was paid. Thereafter Mr. Radford did not request that the rents be delivered to him and made no effort to collect them which is consistent with Robert's testimony that his father did not need or want the crop rents as long as he was drawing old age assistance. Fraud may be established by circumstantial evidence but the showing must be such as to permit a reasonable inference of fraud and not a mere suspicion because where the facts comport as well with honesty as with fraud, the transaction will be deemed to be an honest one. Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 302 [25–26]. The claim of fraud is denied.

The cancellation of a deed requires the exercise of the most extraordinary power of a court of equity and it ought not to be exercised except in a proper case; and to justify cancellation the evidence should be clear, cogent and convincing. Allan v. Allan, Mo., 364 S.W.2d 578, 582 [8, 9]; Herrold v. Hart, Mo., 290 S.W.2d 49, 55 [2]; Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461, 466 [2, 3]. Instead of measuring up to this high standard, the evidence is "loose and inconclusive" in several material respects. Chambers v. Chambers, 227 Mo. 262, 127 S.W. 86, 92 [15].

The only explanation of the conveyances to Robert and Denver is Robert's testimony that Mr. Radford wanted to make himself eligible for old age assistance when he attained the age of 65. See Sections 208.010, 208.030 and 208.150, RSMo 1959, V.A.M.S. No other motive or purpose is suggested. Robert concedes that he and Denver agreed between themselves to give their father the crop rents from the farm in case of need and that such need developed when Mr. Radford's old age assistance was discontinued. Thereafter, and prior to the filing of this suit, Robert sent his father $100 in equal monthly checks. The chief factual dispute is whether Robert agreed to give his father the rents during the interval after the bank note was paid off and before the pension was stopped.

Robert testified positively that his father did not want the rents during that period of time because it would have affected the amount that he was drawing for old age assistance. Mr. Radford testified without objection that Denver sent him the rent checks from his farm during that interval. If this did occur, it is of little or no value as evidence as to what the contract made on April 8, 1953, actually was. What a child does for his parents usually depends on his disposition and financial ability rather than contract. Denver did not testify and Mr. Radford's testimony, largely in answer to leading questions, was sometimes equivocal and is not convincing. His conduct is more consistent with Robert's version of the agreement than his own. Mr. Radford admitted that he did not make any demand on Robert to pay him the rents during that period although it appears that for three or four years of that time Robert and his father lived on the adjoining farms. The undisputed evidence is that Mr. Radford did not make a demand or assert his claim in any fashion for approximately six years after the time Robert was in default according to his present claim. In the meantime Mrs. Belle Radford died and she doubtlessly would have had some knowledge of the facts. This not only has evidentiary value but also savors of laches. See Rebmann v. Rebmann, Mo., 384 S.W.2d 663, 666 [4]. The construction that the parties place on their contract as evidenced by their acts and conduct is strong evidence of their real intent.

The evidence is further indefinite and uncertain as to the time and manner in which the $1600 bank loan was paid off. The bank records would have been helpful in this regard; there is no explanation why they were not produced. Also the date

when Mr. Radford lost his pension is left to conjecture. It appears that additional and better evidence was available than that brought into court. On the record before us, we are constrained to hold that the plaintiff did not establish a right to recover crop rents from Robert prior to the time that his old age assistance was discontinued. Robert admits an obligation from that time on. Whether it rests on a moral or legal consideration, we need not inquire because Robert assumes the liability by his own admission. Robert is therefore in default with respect to this obligation to his father, and the question remaining is whether Mr. Radford is entitled to cancellation of the deed for lack of consideration or failure of consideration arising out of that delinquency.

■ "Failure of consideration differs from lack of consideration in that it refers to something subsequent to the agreement, and not to something inherent in the agreement itself. Failure of consideration, like lack of consideration, is not generally considered a sufficient ground for equitable cancellation of an instrument in the absence of some additional circumstance independently justifying this relief, such as fraud, duress, or mistake. But, as in the case of lack of consideration, where there is a failure of consideration equity will seize upon the slightest circumstance of an inequitable nature for the purpose of administering justice in the particular case." 13 Am.Jur.2d, Cancellation of Instruments § 22, pp. 515–516.

In cases where the consideration of a deed is the promise of the grantee to support the grantor, the courts have reached a variety of results depending on the facts in the particular case. See 50 Am.Jur., Support of Persons §§ 27–30, pp. 886–888; 26 C.J.S. Deeds § 19, p. 614. But this is not a true "support" case because the grantee's liability is definite and limited to turning over or paying to the grantor the amount of the crop rents each year and furnishing him a dwelling place on one of the farms. All of the evidence indicates

that Mr. Radford voluntarily chose not to return to his farm home after his first wife died and he remarried. No breach is claimed in this respect. The amount due in this case can be more readily and accurately determined than in the usual support case. See 92 C.J.S. Vendor and Purchaser § 382 d, p. 323.

■ A voluntary conveyance of land without consideration is valid as between the parties. Spaeth v. Larkin, Mo., 325 S.W.2d 767, 771 [4]; Binnion v. Clark, 359 Mo. 202, 221 S.W.2d 214, 217 [3]. Although it appears that the deed was entirely voluntary on the part of Mr. Radford, the theory of gift need not be relied on because the evidence shows that there was consideration for the deed. The promise of the grantee to support the grantor wholly or in part is sufficient consideration for a deed. Deer v. King, Mo., 30 S.W.2d 980, 982 [4]; Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461, 467 [10]. Furthermore, Mr. Radford stood a chance to benefit from the conveyance in that the amount of old age assistance for which he could qualify equalled or exceeded the income from the farm although the amount he actually received is not shown. See Section 208.150, RSMo 1959, V.A.M.S. The claim of lack of consideration is denied. Even if the consideration for a deed is inadequate, the operative effect of the deed cannot be defeated in the absence of fraud, mistake, undue influence, or some other recognized equitable ground. Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461, 467 [11].

■ Generally a failure of consideration implies that a consideration, once existing and sufficient, has became worthless or has ceased to exist or has been extinguished, partially or entirely. Hargrove v. Lewis, Mo.App., 313 S.W.2d 594, 596 [2–4]. Failure to perform an agreement as promised is ordinarily not a ground for cancellation of a deed in the absence of additional grounds or circumstances justifying equitable relief. 13 Am.Jur.2d, Cancellation of Instruments § 23, p. 516.

There was no clause in the deed providing for a forfeiture, re-entry or reverter on failure to perform the agreement. But, whether we consider Robert's failure to pay the crop rents to his father after need was established by loss of his old age assistance as a failure of consideration or a nonperformance of the agreement by Robert, the result is the same. We have concluded on the record before us that Mr. Radford has not proved by clear, cogent and convincing evidence any ground for the exercise of equity's extraordinary power of cancellation. In this view we are supported by these cases among others: Bevins v. Harris, Mo., 380 S.W.2d 345, 350-351 [5]; Spaeth v. Larkin, Mo., 325 S.W.2d 767, 773 [12]; Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461, 467 [11]; Ruff v. Young, 354 Mo. 506, 190 S.W.2d 208, 211 [3]; Long v. Long, Mo., 121 S.W.2d 800, 802 [3]; Deer v. King, Mo., 30 S.W.2d 980, 982 [4]; Shafer v. Shafer, Mo., 190 S.W. 323, 325 [1]; Chambers v. Chambers, 227 Mo. 262, 127 S.W. 86, 93 [21]. The authorities cited by the respondent involve additional elements and are not controlling on the facts of this case.

The record suggests that there is more in this case than meets the eye. However, the court is not concerned with lack of family accord except as it affects the legal or equitable rights of the parties. Apparently the first and only demand made upon Robert and his wife was the suit to set aside the deed to which relief we have held Mr. Radford was not entitled. A more reasonable and cooperative attitude might have avoided the litigation altogether.

 Whether the plaintiff's remedy at law is adequate or if he is entitled to the security of a lien in equity has not been briefed and we do not decide that question. Also such determination might involve additional facts not in evidence. In this regard, see Bevins v. Harris, Mo., 380 S.W. 2d 345, 353-354 [10]; Bragg v. Ross, 349 Mo. 511, 162 S.W.2d 263, 267 [4-6]; Sturdy v. Smith, Mo.App., 132 S.W.2d 1033, 1039

[12]; and Mollett v. Beckman, Mo.App., 78 S.W.2d 886, 890 [5]. Where it appears that the parties may be entitled to equitable relief of a kind not fully developed by the pleadings and evidence, the cause will in the court's discretion be remanded to afford an opportunity to seek other relief if the parties are so advised. Lucas v. Smith, Mo., 383 S.W.2d 513, 518 [8].

Accordingly the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

EAGER, J., concurs.

FINCH, J., not participating because not a member of the court when cause was submitted.